ELIZABETH SMITH *et al. v.* ALEXANDER M. SMITH.

1. CHANCERY COURT. *Illegal contracts.* A court of equity will not interfere, at the instance of a principal in a transaction compounding a felony, in the absence of fraud or oppression, to set aside an absolute conveyance of land to the surety of the principal on a note executed in furtherance of the illegal bargain, where the facts stated in the bill render it reasonably certain that the surety has paid the note; nor will the court, upon a bill so framed, take jurisdiction upon an allegation that the conveyance was intended merely to secure the note.

2. SAME. *Same. Intervention to set aside illegal contracts in the sound discretion of the court.* The active interposition of equity to set aside executory contracts which are illegal rests in the sound discretion of the court, and is not of right in the parties, and to invoke that discretion the party seeking its aid must do so promptly, or clearly show by the facts stated in the bill that the court can safely act without doing injustice, and can restore the parties to the condition they were in at the making of the contract.

---

FROM GREENE.

---

Appeal from the Chancery Court at Greeneville. H. C. SMITH, Ch.

A. B. WILSON for complainants.

ROBINSON & MALONEY for defendant.

COOPER, J., delivered the opinion of the court.

The chancellor overruled a demurrer to the bill, and the defendant appealed.

About the year 1871, says the bill, the mare of one S. S. Hawkins, a neighbor of complainants, was stolen, but the thief, one Holloway, was caught, tried

Smith *v.* Smith.

and convicted, and the mare returned to the owner. Defendant came to complainant, Elizabeth Smith, and represented that her three sons, two of whom are co-complainants, were implicated in the stealing, that certain persons then named would swear that they saw them take the animal, and that they were certain to be prosecuted. Defendant proposed to compromise the matter if complainant Elizabeth would execute her note to Hawkins for $200. To avoid the threatened prosecution she agreed to give her note, defendant agreeing to become surety thereon if complainant Elizabeth would execute to him a deed of trust on her interest in certain land, it being understood that her three sons should leave the country. The note and deed were accordingly executed. Defendant acted as the agent of Hawkins. The deed was absolute, but was intended as a trust deed, and it was agreed that the land should be sold and the note paid out of the purchase money, the residue of the purchase money to be paid to complainant Elizabeth. Defendant has recently brought an action of ejectment to recover the land under the deed. The bill asks that this suit be perpetually enjoined, that the cloud be removed from complainants' title, and for such other, further and different relief as complainants may be entitled to. The defendant assigns as causes of demurrer that the contract is shown by the bill to be executed; that if illegal, complainants will be repelled from a court of equity; and that the bill does not show that a felony had been committed by the sons of complainant Elizabeth. The bill was filed 29th April, 1878.

· The object of this bill is to have the deed by which the complainant conveyed her land to the defendant set aside as void because given in pursuance of a contract to compound a felony. The facts stated in the bill do clearly show that the sons of the complainant Elizabeth Smith were threatened with a prosecution for stealing, and that said complainant compounded with the party injured by the stealing by giving her note, with defendant as her surety, for $200, and securing the note by a deed on her land absolute in form. It is not distinctly stated that the defendant has paid the note to Hawkins, but inasmuch as the bill does not make Hawkins a party, nor ask that the note be delivered up and cancelled, it may reasonably be inferred that defendant has performed his part of the contract. The question, therefore, is, whether the principal party to an arrangement for compounding a felony can come into a court of chancery, after the defendant has executed his part of the contract as the surety of such party, to set aside an absolute deed for land, upon the ground of the illegality of the transaction.

The question is not free from difficulty, nor are our decisions entirely harmonious. These decisions are reviewed by Andrews, J., in a full and able opinion delivered by him in *Porter* v. *Jones*, 6 Cold., 313. The following conclusions announced by him are fairly deducible from the cases: "Courts (of chancery)," he says, "will not generally, perhaps never, unless under statutory provisions, or where one of the guilty parties has been also the victim of outrageous fraud or

oppression, interfere to set aside a sale or delivery of property or money, which has been made and. completely executed in the course of the illegal transaction. If one has freely parted with the title to, or possession of property upon an illegal or immoral consideration, courts ordinarily consider the parties in equal guilt; and a guilty party, being in *pari delicto,* shall never invoke the aid of the courts to have it restored to him. Much as the community is interested to discountenance immoral and illegal contracts, its interests will not be subserved by setting aside executed contracts and unsettling legal titles."

The learned judge adds: "The active interposition of equity to set aside and cancel illegal (executory) contracts, is matter of sound discretion in the court, and not of absolute right in the party. The inquiry is, has the complainant made such a case as would, were he innocent, entitle him to relief; and if so, does the best interest of society require that relief shall be afforded, notwithstanding the guilt of the party? If not, then the court will refuse its aid, and will leave the parties in whatever difficulties their conduct may have involved them."

In the case before us, the bill states no facts showing fraud or oppression exercised by the defendant over the complainant in the transaction detailed. The complainant freely, so far as appears, parted with the title to the land in controversy, and the defendant has paid the consideration of the conveyance as the surety of the complainant. If the note had not been paid by the surety, and the bill had been filed to have it

delivered up and cancelled, the case would have been like that of *Porter* v. *Jones,* from which we have quoted above. Being paid, the contract is executed on the part of the surety, who is the grantee in the deed, and the complainant has by the deed parted with her title to the land. Nothing remains to be done to make a completely executed contract, unless it can be made executory by turning the deed into a mortgage. But this was precisely the case of *Simmons* v. *Kincaid,* 5 Sneed, 450, where the court held that the grantor *sui juris* would be repelled, relief being only granted to the other parties who were under disability, and who were, therefore, entitled to treat the whole contract as void.

Whatever may have been the right of the complainant to relief as against Hawkins, the note being unpaid, the bill fails to make out a proper case to call into exercise the discretionary power of the court of chancery, even if the contract be in any respect executory. It may have been not only in accordance with public policy, but equitable, to have cancelled a clearly illegal security while in the hands of the payee, and to the exoneration of the surety. It cannot be said to be equally equitable to interpose, merely upon the score of public policy, after the burden has fallen on the surety. Persons who seek the aid of a court of chancery, not for any merit in themselves or their cause, but because the transaction in which they are equally participants is against public policy, must act promptly, or make out a clear case showing that the

parties can be restored to the condition which they were in at the making of the contract.

The complainant has no equity to reform the deed in controversy upon the basis of the illegality of the whole transaction.   But the decree now rendered will be without prejudice to her right to that equity upon a bill properly framed.

The chancellor's decree will be reversed, the demurrer sustained, and the bill dismissed with costs.